UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVERGREEN WINDSOR MHP LLC,

Plaintiff,

v.

TOWN OF WINDSOR,

Defendant.

Case No. 25-cv-09088-EMC

**ORDER GRANTING MOTION TO DISMISS**

Docket No. 12

Plaintiff Evergreen Windsor MHP LLC, a mobile home park owner, sues Defendant, the Town of Windsor, under the Takings Clause of the U.S. Constitution.  Plaintiff alleges that the Town's "Urgency Ordinance," which places a moratorium on mobile home parks' ability to close, constitutes a *per se* physical taking in violation of the Fifth Amendment.  The Town moves to dismiss, arguing that Plaintiff's claim is not ripe and fails to state a takings claim on the merits. For the reasons stated below, the Town's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

Plaintiff Evergreen Windsor MHP LLC ("Evergreen") owns a mobile home park in the Defendant Town of Windsor ("Town") known as the Evergreen Mobile Estates.  Dkt. No. 1 ("Compl.") ¶ 4.  Evergreen rents to 23 separate mobile homeowners under private rental agreements.  *Id.* ¶¶ 31, 38.  These leases allow homeowners to rent park spaces for a defined term, creating nonpermanent leaseholds.  *Id.* ¶¶ 8, 31.

The Town's Rent Stabilization Ordinance, to which Evergreen's rental agreements are subject, limits annual rent increases.  *Id.* ¶ 17.  This rent ordinance made maintaining the park economically infeasible for Evergreen.  *Id.* ¶¶ 17-19, 32.  Accordingly, in June 2025, Evergreen

United States District Court
Northern District of California

provided written notice to its tenants that it was "exploring the option of closing." *Id.* ¶ 33. Evergreen also engaged a consultant who specialized in "community development and resident relocations" who was to begin interviews of residents "necessary for the park's preparation of the relocation impact report related to the closure of the park." *Id.* Under Cal. Gov. Code § 65863.7(a), to complete the closure process, Evergreen would also need to prepare an impact report with a replacement and relocation plan and home appraisal. *Id.* ¶¶ 23-27.

On October 1, 2025, before Evergreen could complete closure, the Town adopted the Urgency Ordinance at issue in this case, which placed a moratorium on mobile home park closures. *Id.* ¶ 34. Specifically, the ordinance placed a "moratorium…on the closure, conversion, or other action that effectively changes the use of a mobile home park from its current use anywhere within the Town of Windsor, regardless of current zoning or land use designation." *Id.* ¶ 35; Ex. A. The Urgency Ordinance provides that "no application for a mobile home park closure, conversion to another use, or mass eviction for any reason other than imminent or emergency health and safety reasons shall be processed, permitted, or otherwise approved by the Town for a period of forty-five (45) days…unless extended by a later enacted ordinance." *Id.*

The Urgency Ordinance was adopted pursuant to Article XI, Section 7 of the California Constitution and Government Code section 65858. *Id.* at Ex. A. Section 65858 ("Interim ordinance as urgency measure") allows municipalities to adopt such urgency ordinance "prohibiting any uses" of land to allow for the study of an issue within "a reasonable time." Such ordinances may be extended by 10 months and 15 days and subsequently by one year. Cal. Gov. Code § 65858(a).

On November 5, 2025, the Town extended the Urgency Ordinance by 10 months and 15 days. Dkt. No. 12 at n.2; Town of Windsor, *Town Council Meeting Recap: Combined 11/5/2025* (Nov. 5, 2025), https://www.townofwindsor.ca.gov/DocumentCenter/View/31478/TC-Recap-Combined-1152025.

United States District Court
Northern District of California

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief.   To overcome a Rule 12(b)(6) motion after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"   *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).   The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).   But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."   *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Ripeness

As a threshold issue, the Town argues that Evergreen may not bring a takings claim because its claim is not ripe for lack of finality.   The 'final decision' ripeness requirement applies only to as-applied takings claims, not facial ones.   *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993); *see also Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1232 (9th Cir. 1994) ("Ripeness requirements are relevant only to 'as applied' challenges, and not to facial challenges.").   As noted below, Evergreen does not appear to allege an as-applied claim that differs meaningfully from its facial challenge.   However, since Evergreen does assert an as-applied claim, the Court will first determine whether the ripeness doctrine bars such a claim.

When a plaintiff alleges a taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a "final" decision.   *Pakdel v.*

*City & Cnty. of San Francisco, California*, 594 U.S. 474, 475 (2021).  This *de facto* finality requirement is "relatively modest."  *Id.* at 478.  To satisfy the requirement, "[a]ll a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question."  *Id.* (cleaned up).  Once the government has committed definitively to a position, the dispute is ripe and a plaintiff is not required to exhaust state or administrative remedies before seeking relief in federal court.  *Id.* at 479-80.

However, failure to make use of available procedures may render a claim unripe if avenues remain for the government to issue a further or different decision.  *See Little Woods Mobile Villa LLC*, 736 F.Supp.3d 757 (N.D. Cal. 2024).  In *Little Woods*, owners of a mobile home park argued that the City's rent control and closure regulations were so burdensome and costly that "any application [to close] would be an exercise in futility."  *Id.* at 765.  The district court rejected the argument that "the ripeness requirement can be satisfied where a plaintiff takes no action at all, and instead merely alleges that all of the available processes would be futile and expensive."  *Id.* Because avenues remained open to the plaintiffs in *Little Woods*—including pursuing a statutory exemption and the City's ability to exercise discretion—the application of the challenged ordinances to Plaintiffs' properties was "not a certain thing" and thus the dispute was not ripe.  *Id.* at 767, 769.

Here, unlike in *Little Woods*, the Urgency Ordinance constitutes a final decision from the government.  There is no question as to whether the Town has committed to a position or retains discretion to allow Evergreen's closure—the ordinance states that "no application for a mobile home park closure, conversion to another use . . . shall be processed, permitted, or otherwise approved by the Town . . ."  Compl. ¶ 35.  Nor does the Urgency Ordinance provide any exceptions or alternative procedures for Plaintiff to pursue.  It is true that absent the Urgency Ordinance, the steps Plaintiff has taken towards closure would not be sufficient to effect closure. Plaintiff would need to show that it met the requirements of Cal. Gov. Code § 65863.7, filed an application for closure, and had its application rejected.  But the Urgency Ordinance displaces the normal application regime and formalizes the Town's position that it will not accept or approve any applications, under any circumstances.  Indeed, the Town concedes in its briefing that under

4

the Urgency Ordinance it would not consider Plaintiff's application even if properly submitted. Dkt. No. 12 at 7. Because the Town's position is final and certain, and Plaintiff has no opportunity to take action to avoid it, Plaintiff did not need to file an application for its claim to be ripe.

The Town cites *Yee v. City of Escondido*, 503 U.S. 519, 528 (1992) for the proposition that Plaintiff needs to run the "gauntlet" of available procedures before its claim is ripe, but this discussion in *Yee* concerned the merits of a takings claim; it was not a ripeness bar. Further, in *Yee*, as in *Little Woods*, the petitioners argued that the statute in question made changing their land use impractical, not impossible. *Id. Yee* is therefore inapposite.

The Town also invokes a line of cases addressing finality in the development moratorium context, but in these cases, landowners were able to submit development proposals for government review where denial was not certain. *Compare Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1233 (9th Cir. 1994) (holding takings claim unripe because applying for a specific development plan was "not impossible or futile") *with Palazzo v. Rhode Island*, 533 U.S. 606, 626 (2001) (holding takings claim ripe where Plaintiff's application was rejected in a way that made clear further applications would be futile). Here, the Urgency Ordinance explicitly states that the Town will not process any closure applications. Compl. ¶ 35. It would be futile for a Plaintiff to submit an application if the government has made clear it will refuse to review it; this nullifies any application requirement. *See Zilber v. Moraga*, 692 F.Supp. 1195, 1206 (N.D. Cal. 1988) ("During that year and a half [moratorium], submission of development plan would, as a practical matter, obviously be futile; the law by its very nature so provided.").

Because the Urgency Ordinance places a total bar on closure applications with no discretion, exemptions, or alternate procedures to pursue, it constitutes a definite position sufficient to satisfy ripeness.

### B. Violation of the Takings Clause[1]

---

[1] Plaintiff's allegations appear to stem "solely from the existence of the statute itself," rather than "a particular application of the statute," rendering this a facial challenge. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 689 (9th Cir.1993). Therefore, this section does not differentiate

1. *Per se* taking versus regulatory taking.

Under the Fifth Amendment, the government shall not take private property without providing just compensation.  U.S. Const. Amend. V.  There are two categories of Fifth Amendment takings: *per se* and regulatory.  A *per se* taking occurs when the government "*requires* the landowner to submit to the physical occupation of his land."  *Yee*, 503 U.S. at 527 (emphasis in original).  The test for a *per se* taking is whether there is a compelled physical invasion of property; there is no balancing test.  *Id.*  Alternatively, a regulatory taking occurs when "the purpose of the [government] regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole.  *Id.* at 522-23.  To determine whether a regulatory taking has occurred, courts balance a set of factors established in *Penn Central Transportation Co. v. New York City*. 438 U.S. 104 (1978).  These factors include "the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).  In the moratorium context, the duration of the restriction is "one of the important factors that a court must consider."  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 342 (2002).

Here, Plaintiff advances only a *per se* taking theory.  *See* Dkt. No. 14 at 9.[2]  Accordingly, this Court examines the *per se* takings precedent and does not employ the *Penn Central* balancing test.

---

between Plaintiff's as-applied and facial claim.
[2] Plaintiff confirmed this at oral argument before the Court on January 29, 2026.

2.  <u>Whether Plaintiff states a *per se* taking claim.</u>

An interference with a landowner's right to exclude can constitute a *per se* taking. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 151 (2021). The Supreme Court has held, however, that an analogous rent control regulation of a mobile home park did not take away a mobile home park owner's right to exclude. *Yee*, 503 U.S. at 527. In *Yee*, the rent control statute at issue removed park owners' ability to "set rents or decide who their tenants will be." *Id.* at 526. It also raised barriers to exit, requiring park owners to provide tenants with six or twelve months notice before terminating a lease due to a change in park use. *Id.; see* Cal Civ Code § 798.56(a)(7)(B). Petitioners raised a *per se* takings claim, asserting that the statute created an indefinite right of physical occupation without the owner's consent or ability to exclude. *Yee*, 503 U.S. at 527. However, the Court held that the law did not amount to a physical taking. *Id.* Key to the Court's analysis was the fact that "Petitioners' tenants were invited by petitioners, not forced upon them by the government," whereas *per se* takings require the landowner to submit to unwanted physical occupation. *Id.* at 528. Although the statute required a six to twelve-month delay before a park owner who wished to change the use of its land could evict existing tenants, the Court determined that this did not amount to "compel[ling] petitioners, once they have rented their property to tenants, to continue doing so." *Id.* at 527-28. The only potential *per se* takings claim *Yee* left open in the landlord-lessee context was if a statute "compel[ed] a landowner over objection to rent his property or to refrain *in perpetuity* from terminating a tenancy." *Id.* at 528 (emphasis added). In the absence of such an extreme restriction, there was no *per se* taking.

The ordinance at issue here is analogous to that in *Yee*. Although the Urgency Ordinance concerns closure, not a rent control, like the statute in *Yee,* it regulates a consensual landlord-tenant relationship. *Id.* at 527. It requires a *temporary* continuation of a pre-existing relationship between the owner and its existing tenants. *Id.* at 528. It does not require owners to rent to a stranger to whom the owner objects. And the ordinance does not require the owner to maintain the current relationship into perpetuity. The maximum time period of two years that the Urgency Ordinance could last is much closer to the twelve-month period in *Yee* than to "perpetuity." *Id.* Notably, the Supreme Court has held that a moratorium lasting longer than two years was not a

United States District Court
Northern District of California

taking in the regulatory takings context. *See Tahoe Sierra*, 535 U.S. at 342 (holding that a 32-month land development moratorium did not constitute a regulatory taking); *cf. Zilber*, 692 F.Supp. at 1206 (one-and-a-half-year moratorium on development was not a regulatory taking); *Kawaoka*, 17 F.3d at 1237 (one-year moratorium did "not rise to constitutional dimensions"). It is difficult to discern why a different result should obtain here simply because Plaintiff asserts a *per se* theory of takings. To hold otherwise would exalt form over substance.

Plaintiff's reliance on *Cedar Point Nursery v. Hassid* is misplaced. There, the Supreme Court held that a California regulation allowing labor organizations to send union organizers onto agricultural employers' land was a *per se* taking. *Cedar Point*, 594 U.S. at 152. Significantly, the physical invasion at issue was by unwanted trespassers, rather than Plaintiff's invited lessees. By contrast, in *Yee*, the Court emphasized that there was no taking because petitioners voluntarily rented their land to mobile park home tenants. *Yee*, 503 U.S. at 528. That is also the case here.

Moreover, Plaintiff overreads *Cedar Point's* language that "a physical appropriation is a taking whether it is permanent or temporary." 594 U.S. at 153. *Cedar Point* was predicated on the statutorily-mandated literal physical invasions of the owner's property by union organizers. *Id.* Such physical invasions, although brief, deprived the owners of a fundamental character of their property, thus constituting a *per se* taking. No such physical invasion is sanctioned by the ordinance here. Unlike *Cedar Point*, and like *Yee*, the ordinance does not require Plaintiff to allow an unwanted stranger onto its property without permission. The property right to exclude has not been taken from Plaintiff.

The Urgency Ordinance, facially or applied, is not a *per se* taking. The Town's motion to dismiss is **GRANTED**.

United States District Court
Northern District of California

8

**IV. CONCLUSION**

The Town's motion to dismiss is **GRANTED** on both counts without leave to amend.

**IT IS SO ORDERED**.

Dated: February 24, 2026

_____
EDWARD M. CHEN
United States District Judge